UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL JACKSON,
as Personal Representative of the
ESTATE OF MARTHA J. WALKER

      Plaintiff,

v.

WELLS FARGO BANK, N.A., a national
banking association,

      Defendant.

Case No.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, MICHAEL JACKSON, as Personal Representative of the ESTATE OF MARTHA J. WALKER, by and through the undersigned counsel, and files this Complaint against the Defendant, WELLS FARGO BANK, N.A., and states as follows:

### Jurisdiction and Venue

1. Jurisdiction is proper pursuant to 28 U.S.C. §1331, as this matter asserts claims under the Electronic Funds Transfer Act, 15 U.S.C. §1693, et. seq., and pursuant to 28 U.S.C. §1367, which provides supplemental jurisdiction over state law claims.

2. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## Administrative Prerequisites

3.    All prerequisites to the filing of this action have been satisfied.

## Parties

4.    Plaintiff, MICHAEL JACKSON ("Plaintiff") is the duly appointed Personal Representative of the Estate of Martha J. Walker, appointed by the Probate Division of the Circuit Court in and for Pasco County, Florida.[1]

5.    Plaintiff is a resident of the State of Alabama.

6.    The ESTATE OF MARTHA J. WALKER (the "Estate" or "Ms. Walker's Estate") is a legal entity created under the laws of the State of Florida, and is administered in Pasco County, Florida.

7.    Prior to and at the time of her passing, the decedent, Martha J. Walker (hereinafter "Ms. Walker"), was a resident of Pasco County, Florida.

8.    Ms. Walker's Estate includes and concerns property located in Pasco County, Florida.

9.    Defendant, Wells Fargo Bank, N.A. (hereinafter "Defendant" or "Wells Fargo") is believed to be a national banking association organized under federal law in South Dakota, with its principal place of business located in California.

---

[1]    Copies of the Pasco County Probate Division documents appointing Michael Jackson as the Personal Representative of the Estate of Martha J. Walker, including Letters of Administration and the Order Admitting Will to Probate and Appointing Personal Representative, are attached hereto as Exhibit "A" to this Complaint.

2

10.    Wells Fargo is actively registered to do business in the State of Florida, and it maintains branch locations throughout Pasco County.

### Factual Background

11.    Prior to her passing, Ms. Walker maintained two checking accounts with Wells Fargo.  Ms. Walker's two Wells Fargo checking accounts are referenced herein as Account No. x0407 and Account No. x0762.   Combined, these two accounts contained approximately $234,000.00.

12.    Ms. Walker, a retired school teacher, worked as a public-school teacher in Dade City, Florida for over 30 years.   The combined $234,000.00 maintained in the two Wells Fargo checking accounts accounted for approximately all of Ms. Walker's life savings.

13.    Ms. Walker was 86 years old at the time of her death in 2024.

14.    Ms. Walker was elderly, widowed, and lived alone in the years prior to her death.

15.    Ms. Walker did not own or use a computer, smartphone, or tablet, and she never used online banking.

16.    Ms. Walker exclusively conducted her banking in person at the local Wells Fargo branch location in Dade City, Florida.   Ms. Walker had been a longstanding customer of Wells Fargo for more than twenty years.  Ms. Walker

routinely visited the Dade City branch office, often one or more times per week, to conduct in person transactions.

17.     Given her frequent, routine visits over the course of many years, Ms. Walker was a familiar and regular customer at the Dade City Wells Fargo branch location.  As such, Ms. Walker was personally known by many of Wells Fargo's representatives, including local branch personnel and management.

18.     Wells Fargo's representatives were well aware of Ms. Walker's banking habits and account preferences.  Wells Fargo's representatives knew that Ms. Walker did not utilize or engage in online banking.

19.     Unbeknownst to Ms. Walker, from July 11, 2023, through February 14, 2024, approximately 17 or more unauthorized electronic fund transfers ("Unauthorized Transfers") were made from Ms. Walker's two Wells Fargo accounts and directed to unknown third parties. In total, a combined amount of approximately $220,414.46 in funds were transferred from Ms. Walker's accounts as a result of the Unauthorized Transfers.

20.     The Unauthorized Transfers were made by and to third parties that were unknown to Ms. Walker.  Per Ms. Walker's account statement records, the Unauthorized Transfers were recorded as transfers to three separate recipients, consisting of and listed as: "Citizenbank NA Payment – Martha J. Walker," "Discover E-Payment Tipple Bernita," and "Chase Credit Card Epay Manu

4

Sherma." Ms. Walker had never previously made or directed any prior transfers or payments to any of these recipients.

21. Many of the Unauthorized Transfers occurred on the same or consecutive days, through similar and consecutive transactions. Most of the transfers were for large amounts, with an immediate consecutive transfer of nearly the exact same dollar amounts to follow.

22. Ms. Walker had never previously made any transfers of funds of an amount equal to or remotely close to any of the large amounts of each of the Unauthorized Transfers.

23. Because Ms. Walker did not utilize or engage in online banking, Ms. Walker had no way of having known of the unauthorized transfers.

24. On or about March 29, 2024, Ms. Walker received a call from a Wells Fargo representative alerting her of possible fraudulent activity on her account. Notably, this phone call was to alert Ms. Walker of a separate incident of possible fraud, separate and apart from the aforementioned Unauthorized Transfers. In particular, the March 29, 2024 phone call was to alert Ms. Walker of a concern regarding two of Ms. Walker's physical check payments that may have been altered or forged.

25. On or about April 01, 2024, Ms. Walker attended an in-person meeting with the Wells Fargo Dade City branch manager to review the suspicious checks

that were the subject of the March 29, 2024 phone call. It was only then, during this in-person meeting, that Ms. Walker was made aware of the suspicious activity pertaining to the Unauthorized Transfers of approximately $220,414.16 that had been transferred from her two checking accounts. Ms. Walker confirmed to Wells Fargo that she did not make or authorize any of the Unauthorized Transfers.

26.     On or about that same day, Ms. Walker notified Wells Fargo in person and in writing that she disputed the Unauthorized Transfers totaling approximately $220,414.16 from her two accounts, Account No. x0407 and Account No. x0762.

27.     Ms. Walker notified Wells Fargo that the transfers were not authorized and were clearly fraudulent as she had never used online banking to conduct any prior fund transfers, had never made any prior transfers or payments to any of the recipients of the subject transfers, and had never before made any transfers or payments anywhere close to the amount of each of the individual transfers at issue.

28.     Immediately following the April 01, 2024 meeting, Ms. Walker made a formal report to Wells Fargo regarding the disputed transactions, and further requested that Wells Fargo conduct an internal investigation into the fraudulent transfers.

29.    Ms. Walker then also filed a formal criminal complaint regarding the fraudulent activity with local law enforcement.

30.    Formal investigations into the fraudulent activity were then conducted by both Wells Fargo internally, and externally by law enforcement.

31.    On or about September 16, 2024, Ms. Walker received a letter from Wells Fargo stating that it had completed its inquiry into the disputed transactions consisting of $71,929.07 in funds that had been electronically transferred from Account No. x0762.  Per the September 16, 2024 correspondence, Wells Fargo determined that "the transaction was authorized or that a processing error did not occur" and, as such, the investigation of this claim had been closed.

32.    No further explanation was provided to Ms. Walker regarding the Unauthorized Transfers from Account No. x0762.  Likewise, no further explanation was ever provided to Ms. Walker's estate regarding these Unauthorized Transfers.

33.    On or about September 23, 2024, Ms. Walker received a second letter from Wells Fargo stating that it had completed its inquiry into the disputed transactions consisting of $137,895.64 in funds that had been electronically transferred from Account No. x0407.  Per the September 23, 2024 correspondence, Wells Fargo again determined that "the transaction was authorized or that a

processing error did not occur" and, as such, the investigation of this claim had been closed.

34.    No further explanation was provided to Ms. Walker regarding the Unauthorized Transfers from Account No. x0407.  Likewise, no explanation was ever provided to Ms. Walker's Estate regarding these Unauthorized Transfers.

35.    Wells Fargo made no further efforts to inspect or remedy the Unauthorized Transfers.

36.    Contrary to the findings of Wells Fargo's internal investigation, local law enforcement reached a different conclusion following its own criminal investigation.    Law enforcement determined that criminal conduct had undoubtedly occurred with regard to the Unauthorized Transfers and referred the matter for criminal prosecution.

37.    Wells Fargo refuses to acknowledge the Unauthorized Transfers.

38.    Wells Fargo has refused to provide any further explanation as to its own findings and basis for the conclusion it reached as a result of its own internal investigations.

39.    Wells Fargo refuses to acknowledge any responsibility for the losses Ms. Walker incurred as a result of the Unauthorized Transfers.

40.    Wells Fargo has refused to provide Ms. Walker and/or her Estate with any relief for the Unauthorized Transfers.

41.    Wells Fargo declined and refused to reimburse or compensate Ms. Walker for the funds lost as a result of the Unauthorized Transfers.

42.    Wells Fargo owed a duty to of reasonable care with regard to its handling of Ms. Walker's accounts maintained within its financial institution.

43.    Wells Fargo breached that duty of care by failing to adequately monitor, report, and investigate the Unauthorized Transfers from Ms. Walker's accounts.

44.    Ms. Walker suffered damages as a result of Wells Fargo's actions.

45.    In addition to the actual monetary loss of $220,414.46 of the misappropriated funds, Ms. Walker also suffered severe emotional distress from the trauma of realizing that her life savings had been unknowingly taken from her. Ms. Walker's severe emotional distress was further compounded by Wells Fargo's repeated refusal to provide her with any assistance, information, or relief with regard to the amounts that were misappropriated through the Unauthorized Transfers.

46.    The severe emotional distress also caused Ms. Walker to suffer from a physical manifestation of stress related symptoms that caused her health to rapidly decline.  Ms. Walker later passed away in June 2024, just one month after having learned that her life savings had been taken from her.

47.    Ms. Walker's Estate, through Plaintiff, Michael Jackson as the Estate's Personal Representative, has now been required to retaine the undersigned counsel to pursue a recovery of the damages suffered.  As a result, Plaintiff is now obligated to pay the undersigned a reasonable fee for the undersigned's representation in this matter.

**Count I:**
**Violation of the Electronic Fund Transfer Act (15 U.S.C. § 1693 et seq.)**

48.    Plaintiff incorporates paragraphs 1 through 47 above as if fully alleged in this count.

49.    Wells Fargo failed to comply with the statutory requirements governing electronic fund transfers as set forth pursuant to 15 U.S.C. § 1693 et seq., otherwise referred to as the Electronic Fund Transfer Act ("EFTA").

50.    Ms. Walker was a "consumer" under the EFTA, and her accounts were "electronic fund accounts."

51.    The Unauthorized Transfers at issue were "unauthorized electronic fund transfers" as defined by the EFTA.

52.    Ms. Walker did not authorize any of the Unauthorized Transfers.

53.    Wells Fargo was obligated to act in good faith and follow commercially reasonable procedures, which it failed to do, with regard to the funds maintained in Ms. Walker's accounts.

54.     The Unauthorized Transfer of Ms. Walker's funds were from accounts that consisted of demand deposit or other asset accounts.  Those accounts were established primarily for personal, family, or household purposes.   The unauthorized electronic fund transfers were initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit Ms. Walker's accounts.

55.     Pursuant to 15 U.S.C. § 1693f(a) of the EFTA, consumers are required to provide appropriate notice to financial institutions of an error (i) within 60 days of the consumers receiving information of the electronic fund transfer by the financial institution, (ii) the consumer's notice must contain information so the financial institution is capable of identifying the name and account number of the consumer, (iii) conveys the consumer's belief that the electronic fund transfer is erroneous, and (iv) the reasons for the consumer's belief that the transfer was indeed erroneous.

56.     Ms. Walker followed all the requirements set forth under §1693f(a) for proper notification of the error with regard to the Unauthorized Transfers from her two accounts, thereby imposing a duty on Wells Fargo to investigate the error and report or mail the results of its investigation within 10 days of Ms. Walker's notice.

57. Wells Fargo failed to comply with its obligations under the EFTA by failing to investigate adequately the Unauthorized Transfers, and by failing to timely provide clear written explanations of the findings of its investigations.

58. Additionally, or in the alternative, Wells Fargo further violated the EFTA by failing to timely correct its errors with regard to the Unauthorized Transfers from Ms. Walker's accounts.

59. Additionally, or in the alternative, Wells Fargo further violated the EFTA by failing to timely reimburse or credit Ms. Walker for the amounts of the Unauthorized Transfers along with applicable interest due.

60. Furthermore, Wells Fargo did not perform a reasonable or good faith investigation regarding the Unauthorized Transfers from Ms. Walker's accounts.

61. Additionally, or in the alternative, Wells Fargo did not have a reasonable basis for believing that the Unauthorized Transfers from Ms. Walker's accounts were not in error.

62. Additionally, or in the alternative, Wells Fargo knowingly and willfully concluded that Ms. Walker's accounts were not in error with regard to the Unauthorized Transfers, when such conclusion could not have been reasonably drawn from the evidence available to Wells Fargo at the time of its investigation.

63.  Pursuant to 15 U.S.C. §1693g(b), the EFTA places the burden of proof on the financial institution to demonstrate that the disputed transfers were authorized.

64.  Pursuant to 15 U.S.C §1693f(e)(1), an individual is entitled to treble damages if a financial institution fails to timely provide a provisional recredit to the individual's account, and the financial institution did not make a good faith investigation of the alleged error, or if the financial institution did not have a reasonable basis for believing that the individual's account was not in error.

65.  Pursuant to 15 U.S.C. §1693f(e)(2), an individual is entitled to treble damages resulting from a financial institution knowingly and willfully concluding that a consumer's account was not in error when no such conclusion could have reasonably been drawn from the evidence available to the financial institution at the time of its investigation.

66.  Wells Fargo's conduct in violating the EFTA directly and proximately caused Ms. Walker and/or her Estate to suffer damages, including, but not limited to the full amount of the total funds that were misappropriated from her accounts through the Unauthorized Transfers, along with applicable interest due.

67.  Plaintiff is entitled to recover and is owed compensation from Wells Fargo for Plaintiff's actual damages, including the full amount of the total funds

that were misappropriated through the Unauthorized Transfers, along with interest due.

68.     Based on the nature of Wells Fargo's violations of the EFTA with regard to the Unauthorized Transfers, Plaintiff is further entitled to a recovery of treble damages.

WHEREFORE, Plaintiff, MICHAEL JACKSON, as the Personal Representative of the ESTATE OF MARTHA J. WALKER, through the undersigned counsel, respectfully requests the Court enter Judgment in favor of the Plaintiff and against the Defendant, awarding Plaintiff all actual and compensatory damages where authorized by law, statutory treble damages, Plaintiff's reasonable attorneys' fees and costs incurred in this action, pre and post-judgment interest, and any other relief deemed appropriate by this Honorable Court.

## Count II:
## Negligence

69.     Plaintiff incorporates paragraphs 1 through 47 above as if fully alleged in this count.

70.     Wells Fargo owed Ms. Walker and/or her Estate a duty to use reasonable care in safeguarding Ms. Walker's accounts and in identifying and responding to suspicious or unauthorized transactions.

71.    Wells Fargo breached that duty by allowing multiple fraudulent electronic transfers from Ms. Walker's accounts over an extended period of time.

72.    Wells Fargo allowed the fraudulent electronic transfers despite Wells Fargo's knowledge of Ms. Walker's lack of online banking usage, knowledge of Ms. Walker's elderly status and vulnerability, knowledge of Ms. Walker's banking history, and despite its knowledge of the unusual patterns and amounts of the various unauthorized transfers.

73.    As a direct and proximate result of these actions, prior to her death, Ms. Walker suffered actual damages of approximately $220,414.46 in funds that were misappropriated from her accounts with Wells Fargo.

74.    As a direct and proximate result of Wells Fargo's actions, prior to her death, Ms. Walker also suffered from severe emotional distress resulting in a rapid decline in health continuing and leading up to her death in June 2024.

WHEREFORE, Plaintiff, ESTATE OF MARTHA J. WALKER by and through its personal representative, MICHAEL JACKSON, and the undersigned counsel, respectfully requests the Court enter Judgment in favor of the Plaintiff and against the Defendant, awarding Plaintiff all actual and compensatory damages where authorized by law, Plaintiff's attorneys' fees and costs, and any other relief deemed appropriate by this Honorable Court.

## Count III:
## Breach of Contract

75.     Plaintiff incorporates paragraphs 1 through 47 above as if fully alleged in this count.

76.     Ms. Walker maintained contractual deposit agreements with Wells Fargo.

77.     Wells Fargo breached those agreements by allowing unauthorized third parties to access and transfer funds from Ms. Walker's accounts.

78.     As a result, Ms. Walker and/or her Estate have incurred substantial financial damages, including actual damages in the amount of $220,414.46.

WHEREFORE, Plaintiff, ESTATE OF MARTHA J. WALKER, by and through its personal representative, MICHAEL JACKSON, and the undersigned counsel, respectfully requests the Court enter Judgment in favor of the Plaintiff and against the Defendant, awarding Plaintiff all actual and compensatory damages where authorized by law, Plaintiff's attorneys' fees and costs, and any other relief deemed appropriate by this Honorable Court.

## COUNT IV:
## Conversion

79.     Plaintiff incorporates paragraphs 1 through 47 above as if fully alleged in this count.

80. Ms. Walker had a possessory interest in the funds held in her Wells Fargo accounts.

81. Defendant wrongfully exercised dominion and control over those funds by refusing to return them upon proper demand.

82. As a direct and proximate result, Ms. Walker and the Estate suffered damages in the amount of $220,414.46, plus interest.

WHEREFORE, Plaintiff, ESTATE OF MARTHA J. WALKER, by and through its personal representative, MICHAEL JACKSON, and the undersigned counsel, respectfully requests the Court enter Judgment in favor of the Plaintiff and against the Defendant, awarding Plaintiff all actual and compensatory damages where authorized by law, Plaintiff's attorneys' fees and costs, and any other relief deemed appropriate by this Honorable Court

## COUNT V:
### Violation of Fla. Stat. §670.204

83. Plaintiff incorporates paragraphs 1 through 47 above as if fully alleged in this count.

84. Ms. Walker did not authorize Defendant to make any of the Unauthorized Transfers.

85. Under Fla. Stat. §670.204, if a bank accepts a payment order not authorized by the customer and not effective under agreed-upon security procedures, the bank must refund the amount and pay interest.

86.     The Unauthorized Transfers constituted payment orders that were not authorized by Ms. Walker and not effective under any agreed-upon security procedures between Defendant and Ms. Walker.

87.     Ms. Walker timely notified Defendant of the Unauthorized Transfers within a reasonable time from when she first learned of the Unauthorized Transfers.

88.     Defendant was not entitled to enforce payment of the Unauthorized Transfers.

89.     Defendant failed to refund the amounts of the Unauthorized Transfers as required by law.

90.     As a result, Ms. Walker and/or the Estate suffered damages in the amount of $220,414.46, plus interest.

WHEREFORE, Plaintiff, MICHAEL JACKSON, as the Personal Representative of the ESTATE OF MARTHA J. WALKER, through the undersigned counsel, respectfully requests the Court enter Judgment in favor of the Plaintiff and against the Defendant, awarding Plaintiff all actual and compensatory damages where authorized by law, Plaintiff's reasonable attorneys' fees and costs incurred in this action, pre and post-judgment interest, and any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

**Dated**: August 14, 2025.

Respectfully submitted,

**WALLER LAW**

*/s/ Sean A. Douthard*
SEAN A. DOUTHARD, ESQ.
Florida Bar No.: 102589
Post Office Box 1668
Dade City, Florida 33526-1668
(352)567-4690
(352) 567-1307 (fax)
pleadings@wallerlawfl.com
sean@wallerlawfl.com
*Attorney for Plaintiff*

# EXHIBIT "A"

IN THE CIRCUIT COURT IN AND FOR
PASCO COUNTY, FLORIDA
PROBATE DIVISION

IN RE:    The Estate of

MARTHA JANE WALKER, a/k/a
MARTHA J. WALKER, Deceased

FILE NO:   512024CP001306CPAXES

---

**LETTERS OF ADMINISTRATION**
*(Single Personal Representative)*

**TO ALL WHOM IT MAY CONCERN:**

*WHEREAS, MARTHA JANE WALKER, a/k/a MARTHA J. WALKER*, a resident of Pasco County, Florida, died on *June 18, 2024*, owning assets in the State of Florida, and

*WHEREAS, MICHAEL E. JACKSON* has been appointed Personal Representative of the Estate of the Decedent and has performed all acts prerequisite to issuance of Letters of Administration in the Estate,

*NOW, THEREFORE,* I, the undersigned Circuit Judge, declare *MICHAEL E. JACKSON* duly qualified under the laws of the State of Florida to act as Personal Representative of the Estate of *MARTHA JANE WALKER, a/k/a MARTHA J. WALKER*, deceased, with full power to administer the Estate according to law; to ask, demand, sue for, recover and receive the property of the Decedent; to pay the debts of the Decedent as far as the assets of the Estate will permit and the law directs; and to make distribution of the Estate according to law.

*ORDERED* on _____, 2024.

2024-CP-001306 9/12/2024 4:37:25 PM
Circuit Judge James Stearns
**2024-CP-001306 9/12/2024 4:37:25 PM**

_____
*Circuit Judge*

DIN: 19

IN THE CIRCUIT COURT IN AND FOR
PASCO COUNTY, FLORIDA
PROBATE DIVISION

IN RE:    The Estate of

MARTHA JANE WALKER, a/k/a
MARTHA J. WALKER, Deceased

FILE NO.:  512024CP001306CPAXES

## ORDER ADMITTING WILL TO PROBATE
## AND APPOINTING PERSONAL REPRESENTATIVE
(Self-Proved)

The instrument presented to this Court as the last Will of *MARTHA JANE WALKER, a/k/a MARTHA J. WALKER*, deceased, having been executed in conformity with law, and made self-proved by the acknowledgment of the Decedent and the affidavits of the witnesses, made before an officer authorized to administer oaths and evidenced by the officer's certificate attached to or following the Will in the form required by law, and no objection having been made to its probate, and the Court finding that the Decedent died on *June 18, 2024*, and that *MICHAEL E. JACKSON* is entitled and qualified to be Personal Representative, it is

*ADJUDGED* that the Will dated *August 1, 2006*, and attested by *Laura Fulcher* and *Barbara Roenicke* as subscribing and attesting witnesses, is admitted to probate according to law as the last will of the Decedent, and it is further

*ADJUDGED* that *MICHAEL E. JACKSON* is appointed Personal Representative of the Estate of the Decedent, and that upon taking the prescribed oath, filing designation and acceptance of resident agent, and filing bond in the sum of $18,000_____, Letters of Administration shall be issued.

*ORDERED* on _____, 2024.

2024-CP-001306 9/3/2024 4:54:33 PM
Circuit Judge James Stearns
2024-CP-001306 9/3/2024 4:54:33 PM
_____
*Circuit Judge*